# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

_____

PATRICK M.,

                              Plaintiff,

v.                                                3:18-CV-290 (ATB)

ANDREW M. SAUL, [1]
Comm'r of Soc. Sec.,
                              Defendant.

_____

APPEARANCES:                          OF COUNSEL:

LACHMAN & GORTON                      PETER A. GORTON, ESQ.
Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.           SERGEI ADEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

ANDREW T. BAXTER, United States Magistrate Judge

## DECISION and ORDER

Currently before the Court, is this Social Security action filed by Patrick M. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to

42 U.S.C. §§ 405(g) and 1383(c)(3).  This matter was referred to me, for all proceedings and

entry of a final judgment, pursuant to N.D.N.Y. General Order No. 18, and in accordance with

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019.  The Clerk of
Court is respectfully directed to amend the caption.

the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 4, 6). The parties have each filed briefs (Dkt. Nos. 12 and 13) addressing the administrative record of the proceedings before the Commissioner. (Dkt. No. 8.)[2]

## I. RELEVANT BACKGROUND

### A. Procedural History

On August 11, 2014, Plaintiff applied for a period of disability and disability insurance benefits, as well as Supplemental Security Income, alleging disability beginning March 21, 2014. Plaintiff's applications were initially denied on November 24, 2014, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ Kenneth Theurer on December 9, 2016, at which a VE also testified. (T. 69-106.) On February 6, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 8-23.) Plaintiff's submitted, to the Appeals Council, additional medical evidence from UHS Primary Care, and a medical source statement from treating physician, Zack Emery, D.O., dated March 29, 2017, covering the period from December 2015 through March 2017. (T. 2, 33-68.) On January 8, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-7.)

### B. Factual Background

Plaintiff was born in 1974, making him 39 years old on the alleged onset date and 42 years old on the date of the ALJ's decision. Plaintiff reported completing the ninth grade, along with some tenth and eleventh grade courses, and previously working as a cashier, janitor, bus

---

[2] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

driver, and diesel mechanic (as identified by the vocational expert ("VE") at the administrative hearing). At the initial level, Plaintiff alleged disability due to high blood pressure, degenerative disc disease, chronic lumbar and cervical pain, migraine headaches, and hearing loss in both ears.

### C.     The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. (T. 13-19.) The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. (T. 13.) The ALJ determined that Plaintiff has not engaged in substantial gainful activity since March 21, 2014, the alleged onset date. (*Id*.) The ALJ further found that Plaintiff has severe impairments including degenerative disc disease with lumbar and cervical pain. (T. 13-14.) The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 through the date last insured. (T. 14.) Specifically, the ALJ gave special consideration to Listing 1.04 (disorders of the spine). (*Id*.) The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a range of sedentary work

> that includes occasionally lifting ten pounds, sitting for approximately six hours, and standing or walking for approximately two hours in an eight-hour day with normal breaks. [He] can occasionally climb ramps or stairs, but never ladders, ropes or scaffolds. He can also occasionally balance, stoop, kneel, crouch and crawl. [He] must alternate from seated to standing position, or vice versa, four times per hour for not more than five minutes, while remaining on task at his workstation. [He] is also limited to performing simple, routine, and repetitive tasks in a work environment that is free of fast-paced production requirements, and involves only simple, work-related decisions, with few, if any, workplace changes.

(*Id*.) The ALJ determined that Plaintiff is unable to perform any past relevant work. (T. 17.) The ALJ then found that there are jobs existing in significant numbers in the national economy

that Plaintiff can perform.  (T. 18-19.)  The ALJ therefore concluded that Plaintiff is not disabled. (T. 19.)

### D.  Medical Evidence Before the ALJ

#### 1.  Treating Source Opinions

In December 2016, treating physician Dr. Khan noted Plaintiff's back pain and tenderness in the lumbar paraspinals.  (T. 401.)  He opined that Plaintiff's conditions would cause pain, fatigue, diminished concentration and work pace, and the need to rest at work.  (T. 401.)  Plaintiff would be off-task more than 10 percent of the workday but less than 15 percent and absent two days per month.  (T. 401-02.)  Dr. Khan also found that Plaintiff could sit for approximately six hours in an eight-hour workday, should change positions every hour, could stand/walk two hours out of an eight-hour workday, and could frequently lift up to ten pounds and occasionally lift over ten pounds.  (T. 402.)  Dr. Khan indicated that these limitations were present between May 21, 2015, to November 30, 2015.  (*Id.*)

The ALJ afforded greater but not controlling weight to Dr. Khan's opinion "because he is reportedly [Plaintiff's] pain specialist (10E), although the record does not contain any of his treatment notes."  (T. 16.)  The ALJ noted that Dr. Khan's assessment was more specific than that of the consultative examiner, Dr. Jenouri.  But, the ALJ also observed that Dr. Khan's opinions about Plaintiff's limitations applied "only" to the period from May 21, 2015, to November 30, 2015.  (*Id.*)  The ALJ also found that Dr. Khan's opinions with respect to Plaintiff being off-task and absent from work were inconsistent with the other medical and non-medical evidence in the record, as discussed further below.  (T. 16, 257-67, 370-75, 411-13.)  The ALJ noted that Plaintiff's examinations had consistently noted normal cognitive functioning.  (T. 16, 376-400, 407-30.)

The ALJ also referenced opinions from emergency room provider Dave Robinson, FNP, and provider Santhosh Cherian, M.D., who both indicated in March 2014 that Plaintiff should be excused from work.[3] (T. 16-17, 358-59.) The ALJ gave limited weight to Mr. Robinson's recommendations as they were temporary and little weight to Dr. Santhosh's statement because it was not supported with an explanation or relevant evidence. (T. 16-17.) The ALJ also noted both assessments addressed an issue reserved to the Commissioner. (*Id.*)

### 2. Dr. Jenouri's Consultative Opinion

In November 2014, Plaintiff underwent a consultative examination conducted by Dr. Jenouri. This doctor noted that Plaintiff appeared to be in no acute distress, he had a normal gait and stance, his squat was only 30 percent, he was unable to walk on his heels and toes without difficulty, he did not use an assistive device, he needed no help changing for the exam or getting on and off the exam table, and he was able to rise from a chair without difficulty. (T. 371.) Dr. Jenouri also found that Plaintiff had limited range of motion in the cervical and lumbar spine, positive straight leg raising ("SLR") testing at 30 degrees on the right and 20 degrees on the left (both confirmed seated), bilateral sciatic notch tenderness to palpation, cervical tenderness to palpation, some limited range of motion in the shoulders and hips, physiologic and equal deep tendon reflexes in the upper and lower extremities, no sensory deficits, and full strength in the upper and lower extremities. (T. 372.) Dr. Jenouri diagnosed neck pain, low back pain, right lower extremity paresthesias, bilateral lower extremity radiculopathy, hypertension, and a history of a hearing impairment. (T. 373.) He opined that Plaintiff had moderate restriction to walking, standing, and sitting long periods, bending, stair climbing, lifting, and carrying. (*Id.*)

---

[3] Mr. Robinson also noted lifting restrictions. T. 358.

The ALJ gave Dr. Jenouri's opinion some weight "as he personally examined [Plaintiff] and his opinions are supported by his and other objective medical findings." (T. 15.)  The ALJ disagreed with counsel's contention that independent examples from other consultative examinations showed Dr. Jenouri "essentially equates 'mild' limitations with a sedentary functional capacity." (T. 16, 300-31.)  The ALJ indicated that in this case, there was no inconsistency which warranted seeking clarification from Dr. Jenouri and that "Dr. Jenouri's narrative medical source statement is not inconsistent on its face." (T. 16.)

E.     **Issues in Contention**

In his brief, Plaintiff argues that it is unclear whether the Appeals Council actually looked at the medical source statement and supporting records of Zack Emery, D.O.  Plaintiff notes that the Appeals Council denial letter states that the Appeals Council found "this evidence does not show a reasonable probability that it would change the outcome of the decision," but then makes the apparently contradictory statement that "[w]e did not consider and exhibit this evidence." (Dkt. No. 12, at 8-14; T. 2.)  Plaintiff further argues that the issue of whether the evidence is not new, material or relevant is not before this Court, because the Appeals Council did not make any such findings.  (*Id*. at 9.)  Plaintiff argues the Appeals Council erred because the new evidence is from a treating provider and demonstrates that Plaintiff cannot meet standing/walking, off-task, and/or attendance demands of sedentary work.  (*Id*. at 9-14.)

Plaintiff also contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly substituted his lay opinion for that of undisputed medical opinion on the issues of work pace and attendance and because the ALJ violated the treating physician rule regarding the opinion of Sajid Khan, M.D.  (*Id*. at 14-21.)  Plaintiff maintains that the opinion of consultative examiner Gilbert Jenouri, M.D., cannot be said to be inconsistent

with that of Dr. Khan and Dr. Emery because his use of the word "moderate" is too vague to constitute substantial evidence in support of the ALJ's RFC. (*Id*. at 19-21.) Finally, Plaintiff argues that the Step Five determination is not supported by substantial evidence because it relies on VE testimony based on a faulty hypothetical. (*Id*. at 21-22.)

In his brief, Defendant contends that evidence Plaintiff submitted to the Appeals Council does not establish a reasonable probability that it would have changed the outcome of the ALJ's decision, and that Dr. Emery's opinion does not warrant remand or make the ALJ's decision contrary to the weight of the evidence. (Dkt. No. 13, at 12-15.) Defendant also argues that substantial evidence supports the ALJ's RFC finding because the ALJ reasonably weighed the evidence. Defendant further contends that Plaintiff seeks to circumvent the substantial evidence standard by claiming Dr. Khan's opinion regarding attendance and off-task time was the only opinion evidence on these issues, and therefore binding on the ALJ unless the ALJ refuted this opinion through overwhelming evidence. (*Id*. at 15-25.) Finally, Defendant argues that the ALJ reasonably relied on the VE's testimony. (*Id*. at 25-26.)

On reply, Plaintiff contends that the new opinion evidence from a treating physician created a reasonable probability that it would affect the outcome of the case, warranting remand because the Appeals Council erred in not reviewing the ALJ's decision. Plaintiff further argues that the RFC finding is not supported by substantial evidence, particularly when the new evidence is properly considered. (Dkt. No. 16, at 1-5.)

## II.   GENERALLY APPLICABLE LAW

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d

856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See, e.g., Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Selian*, 708 F.3d at 417 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.      Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### C. Treating Physician

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, " . . . the opinion

of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

### D.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, 11-CV-1386, 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. § 404.1545. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions that a plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta*, 737 F. Supp. at 183; *Sullivan v. Sec'y of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 09-CV-1120, 2010 WL 3825629, *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

The full range of sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday. Sedentary work "generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing SSR 83-10, 1983 WL 31251, at *5).

## III. ANALYSIS

### A. The Appeals Council Erred in its Analysis of the Post-Decision Evidence

#### 1. Applicable Law

 "Once evidence is added to the record, the Appeals Council must then consider the entire record, including the new evidence, and review a case if the 'administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Lesterhuis v. Colvin*, 805 F.3d 83, 86 (2d Cir. 2015) (quoting 20 C.F.R. § 404.970(b)). "The Appeals Council is obligated to consider 'new and material evidence.'" *Stratton v. Colvin*, 51 F. Supp. 3d 212, 218 (N.D.N.Y. 2014) (citing 20 C.F.R. § 404.970(b)). "New evidence is 'material' if it is: '(1) relevant to the claimant's condition during the time period for which benefits were denied and (2) probative.'" *Stratton*, 51 F. Supp. 3d at 218 (quoting *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004)). "'The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.'" *Id.* (quoting *Pollard*, 377 F.3d at 193) (alteration in original).

#### 2. Analysis

In considering Plaintiff's case, the Appeals Council received medical evidence dated May 18, 2016, through January 13, 2017, from UHS Primary Care and a medical source statement from treating physician, Dr. Emery, dated March 29, 2017, covering the period from December 2015 through March 2017. (T. 2, 33-68.) Although the new medical source statement was dated almost two months after the ALJ issued his decision, there is no apparent disagreement that Dr. Emery's opinions were relevant to the claimant's condition during the time period for which benefits were denied.

Regarding the new evidence, the Appeals Council stated "[w]e find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence." (T. 2.) Plaintiff takes issue with this purportedly contradictory language, arguing that it is unclear whether the Appeals Council actually considered the new medical evidence. It appears that the Appeals Council did consider the new evidence, to the extent it so stated, and the new evidence was ultimately included as an exhibit in the record in this action, notwithstanding the Appeals Council's statement that it was not exhibited. However, the Court finds that the Appeals Council's erred in how it supported its findings with respect to the new evidence from a treating physician, and in its conclusion that the new evidence did not show a reasonable probability that it would change the outcome of the ALJ's decision.

As the Second Circuit has held in *Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996):

When the Appeals Council grants review, the decision of the Appeals Council is the final decision of the Secretary. See 20 C.F.R. §§ 404.981, 416.1481. However, if the Appeals Council denies review, the ALJ's decision becomes the Secretary's final decision. See §§ 404.981, 416.1481. The final decision of the Secretary is subject to judicial review. 42 U.S.C. § 405(g).

However, even in cases such as this one, where the Appeals Council has denied review of the ALJ's decision, "it is well-settled that '[t]he role of the district court is to determine if the Appeals Council erred when it determined that the new evidence was insufficient to trigger review of the ALJ's decision.'" *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *4 (N.D.N.Y. Feb. 13, 2019) (citing, inter alia, *Allborty v. Comm'r of Soc. Sec.*, No. 6:14-CV-1428 (DNH/ATB), 2016 WL 770261, at *8 (N.D.N.Y. Jan. 28, 2016), (Rep't-Rec.), *adopted*, 2016 WL 796071 (N.D.N.Y. Feb. 22, 2016)).

Even in cases where the Appeals Council denies review of an ALJ's decision:

"[W]hen claimants submit to the Appeals Council treating-physician opinions on the nature and severity of their impairments during the relevant period of disability, 'the treating physician rule applies, and the Appeal's Council must give good reasons for the weight accorded to' that opinion." . . . Further, "[i]t is insufficient for the Appeals Council to merely acknowledge that they reviewed new evidence from a treating physician without providing such reasoning. . . ."

*Allborty*, 2016 WL 770261 at *8 (citations omitted). *Accord, e.g., Toth v. Colvin*, No. 5:12-CV-1532 (NAM/VEB), 2014 WL 421381, at *6 (N.D.N.Y. Feb. 4, 2014); *Sears v. Colvin*, No. 8:12-CV-570 (MAD/ATB), 2013 WL 6506496, at *7 (N.D.N.Y. Dec. 12, 2013); *Shrack v. Astrue*, 608 F. Supp. 2d 297, 302 (D. Conn. 2009); *Asturias v. Colvin*, No. 13-CV-143, 2014 WL 3110028, at *2 (W.D.N.Y. July 7, 2014). The Second Circuit has not squarely addressed the Appeals Council's obligation to apply the treating physician rule when it denies review. *See, e.g., Lesterhuis v. Colvin*, 805 F.3d at 89 ("we need not consider [plaintiff's] alternative argument that the Appeals Council has an independent obligation to provide 'good reasons' before declining to give weight to the new, material opinion of a treating physician submitted only to the Appeals Council and not to the ALJ). In the absence of clear Second Circuit authority to the contrary, this Court will continue to hold that the Appeals Council must articulate good reason for not following treating physician evidence, even when it denies review. Otherwise, the Court, when evaluating whether the ALJ's decision is supported by the current evidence would be required, in the first instance, to apply the treating physician analysis, when that analysis must initially be applied by the Commissioner. See *Lesterhuis v. Colvin*, 805 F.3d at 88, 89.

The only discussion of the new treating physician opinion evidence by the Appeals Council in this case was the finding that "this evidence does not show a reasonable probability that it would change the outcome of the decision." That finding clearly does not come close to the explicit analysis of the identified factors required by the treating physician rule. *See, e.g.,*

14

*Asturias v. Colvin*, 2014 WL 3110028, at *6 (the Appeals Council's statement that the newly submitted treating physician evidence "does not provide a basis for changing the Administrative Law Judge's decision . . . not only failed to provide 'good reasons' for disregarding the treating physician's opinion, it did not provide any reasons at all") (citation omitted).

When the Appeals Council has not properly applied the treating physician rule in analyzing new evidence submitted to it, the remedy in a remand to an ALJ so that he or she can properly support analysis under that rule. *Allborty*, 2016 WL 770261 at *9; *Toth*, 2014 WL 421381, at *6. Remand on such grounds is appropriate here.

Independently of the Appeals Council's failure to apply the treating physician rule, remand is appropriate if it erred in its finding on the merits that the new evidence did not warrant review of the ALJ's decision. In that analysis, "the issue before the Court is whether the new evidence altered the weight of the evidence before the ALJ so dramatically as to require the [Appeals Council] to take the case." *Kirah D.*, 2019 WL 587459, at *4 (citing *Canady v. Comm'r of Soc. Sec.*, No. 1:17-CV-0367 (GTS/WBC), 2017 WL 5496071, at *11 (N.D.N.Y. Oct. 4, 2017) (Rep't and Rec.), *adopted* 2017 WL 5484663 (N.D.N.Y. Nov. 14, 2017) and *Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir. 2014) (in deciding whether the Appeals Council erred by refusing to review the ALJ's decision in light of new evidence, the issue is whether that evidence "did not alter the weight of the evidence so dramatically as to require the Appeals Council to take the case.")); *Sears v. Colvin*, 2013 WL 6506496, at *7 (the Appeals Council erred when it determined that the new evidence did not create a reasonable possibility that the ALJ would have reached a different result, which warrants remand).

While the medical opinions provided by Dr. Emery after the ALJ's decision were similar in some respects to the prior opinions of another treating physician, Dr. Khan, there were some

critical differences. Both physicians indicated that Plaintiff's chronic back pain would cause fatigue, diminished concentration and work pace, and the need to rest at work. (T. 66, 401.) Dr. Khan indicated Plaintiff would be off-task more than 10 percent of the workday, but less than 15 percent, and absent two days per month. Dr. Emery opined that Plaintiff would be off-task more than 33 percent of the day and absent four days per month. (T. 66-67, 401-02.) The differences between these opinions are important in light of the VE's testimony that an employee who was off-task more than 15% of the time or who had more than one unexcused absence per month would not be acceptable or tolerable to any employer. (T. 100-101). Hence, Dr. Emery's opinion regarding the extent to which Plaintiff would be off-task was crucial to the question of whether Plaintiff could perform any competitive work.

Both doctors opined that Plaintiff could sit for approximately six hours in an eight-hour workday and should change positions every hour. (T. 67, 402.) Dr. Khan opined Plaintiff could stand/walk two hours out of an eight-hour workday, could frequently lift up to ten pounds, and occasionally lift over ten pounds. Dr. Emery stated that Plaintiff could stand/walk for approximately half an hour out of an eight-hour workday day, frequently lift five pounds, and occasionally lift ten pounds. (*Id*.) Again, Dr. Khan's opinion regarding Plaintiff's ability to stand is consistent with the ALJ's RFC for sedentary work, while Dr. Emery's opinion is not.

Finally, Dr. Khan indicated limitations he found were present from May 2015 to November 2015, while Dr. Emery indicated his opined limitations were present from December 2015 to March 2017. (*Id*.) The ALJ discounted some of Dr. Khan's opinions about Plaintiff's limitations because of the limited time period covered by his medical source statement. Dr. Emery's medical source statement covered a substantially longer period of time, and thus would logically be more influential in the ALJ's analysis of Plaintiff's limitations. The ALJ discounted

Dr. Khan's findings with respect to Plaintiff being off-task and absent from work based largely on some of Plaintiff's activities of daily living. (T. 16.) To the extent that Dr. Khan and Dr. Emery have similar opinions about such limitations that were inconsistent with the ALJ's RFC findings, the existence of a consistent second medical opinion would create a reasonable probability of influencing the ALJ's decision.

The Court acknowledges that defense counsel has made arguments suggesting why the Commissioner might assign limited weight to the opinions of Dr. Emery that are inconsistent with the ALJ's RFC determination. (Dkt. No. 13, at 12-15.) However, as noted earlier, it is the Commissioner who must, in the first instance, apply the treating physician rule to evaluate medical evidence, not the Court or defense counsel. And, neither the ALJ nor the Appeals Council evaluated Dr. Emery's opinions in a manner consistent with the treating physician rule. Given that Dr. Emery's opinions are different from prior medical opinion evidence in ways that would be inconsistent with the ALJ's RFC determination and his finding that Plaintiff was not disabled, this new evidence altered the weight of the evidence sufficiently to create a reasonable probability that the ALJ would have reached a different result. The Appeals Council's contrary finding was not supported by substantial evidence, and remand is warranted on that basis.

**B. The ALJ's Decision was not Supported by Substantial Evidence, in Light of the New Medical Evidence Submitted to the Appeals Council.**

Even if the Court focuses on the decision of the ALJ in this action (and not that of the Appeals Council), the case must be remanded for further consideration by the Commissioner. If the "administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record," including new evidence submitted to the Appeals Council, remand is appropriate. *Lesterhuis v. Colvin*, 805 F.3d at 87-88. The Court finds that, applying the

reasoning of *Lesterhuis*, the ALJ's decision was not supported by substantial evidence, when the new medical evidence from Dr. Emery is included in the analysis.

"First, Dr. [Emery] is a treating physician, so SSA regulations give his opinions 'controlling weight' so long as they are 'well-supported by medically acceptable . . . techniques and [are] not inconsistent with the other substantial evidence in [the record].' 20 C.F.R. § 404.1527(c)(2). On remand, the ALJ might conclude that [Emery's] opinion is not entitled to any weight, much less controlling weight, but that determination should be made by the agency in the first instance, and we should refrain from 'affirm[ing] an administrative action on grounds different from those considered by the agency.'" *Lesterhuis v. Colvin*, 805 F.3d at 88 (some citations omitted and substituting name of treating physician in this case).

Second, as in *Lesterhuis*, at least some of the new opinion evidence from the treating physician, if given controlling weight, would vitiate the ALJ's finding that the Plaintiff was not disabled. Here, as in *Lesterhuis*, the uncontradicted opinion of the treating doctors indicated, inter alia, that the Plaintiff would have more unexcused absences from work than would be consistent with maintaining employment in the national economy, based on the testimony of the VE. *Id*. As in *Lesterhuis*, the new opinion of the treating physician regarding unexcused absences in this case, which disqualified Plaintiff from competitive employment, was supported by other opinion evidence, i.e., that of Dr. Khan. *Id*.[4] The findings and opinions of the

_____

[4] Dr. Emery's opinions that Plaintiff would be off-task more than 33% of the workday and could only stand for 0.5 hours in an eight-hour workday were also inconsistent with the ALJ's RFC findings. However, as noted above, Dr. Khan found that Plaintiff could stand for two hours in an eight-hour workday and would be off-task more than 10%, but less than 15% of the workday, which, based on the testimony of the VE, would not disqualify Plaintiff from all competitive work.

18

consultant who examined Plaintiff a single time, Dr. Jenouri, were not probative of Plaintiff's ability to stay on-task or the likelihood of unexcused absences from work.

However, the Court in *Lesterhuis* also noted that the parties identified "nothing in the record" that contradicted the treating physician's opinion regarding unexcused absences from work that would preclude the Plaintiff from securing work in the national economy. The ALJ, in this case, cited certain medical and non-medical evidence in explaining why he did not give controlling weight to Dr. Khan's opinions, particularly those with respect to the Plaintiff being off-task and absent from work.:

> The claimant's records indicate he has attended his appointments and medical tests as scheduled, taken his medication as prescribed, and followed other treatment recommendations. . . . The claimant indicated in his function report that he had no problems paying attention or following instructions ([T. 264.]). He has also described doing a variety of tasks that would require an ability to maintain focus, such as driving and traveling independently, shopping, managing money, cooking, playing computer games, and watching television . . . . Finally, the claimant's examinations have consistently noted normal cognitive functioning . . . .

(T. 16).

The Court finds that the evidence cited by the ALJ does not effectively contradict the opinions of Dr. Emery and Dr. Khan regarding Plaintiff's limitations with respect to staying on-task and missing work. First, Dr. Emery and Dr. Khan opined that the Plaintiff would be off-task or would have absences from work due to chronic back and/or neck pain, which, Plaintiff has consistently stated, fluctuated in severity. (T. 66, 90-91 (Plaintiff testifies he experiences severe pain every day, but, at least one day per week, it is so excruciating he needs help getting out of bed), 265-67, 401). The ALJ cited the absence of evidence that Plaintiff had cognitive deficits and Plaintiff's statements that he could pay attention and follow instructions, but the treating doctors never pointed to cognitive limitations as the reason Plaintiff would be off-task or would miss work. It is also worth noting that the ALJ selectively referenced Plaintiff's statements

relevant to his ability to stay on-task and the nature and duration of his daily activities. (See, e.g., T. 260 (due to condition, went from preparing meals that took hours to meals that take minutes), 261 (can no longer pursue hobbies and interests daily due, inter alia, to neck and back pain), 262 (shops only once per month), 264 (cannot finish chores or reading that he has started).[5] The Plaintiff's ability to attend medical appointments and engage in other daily activities of limited duration do not correlate to the Plaintiff's ability to stay on-task during an eight-hour work day or the likelihood that he would miss work several days per month because of exacerbations of his chronic back or neck pain.[6]

On remand, the Commissioner may be able to articulate why controlling weight should not be assigned to the opinions of the treating physicians which contradicted the ALJ's RFC determination and the finding that Plaintiff was not disabled. See, e.g., *Smith v. Berryhill*, 740 F. App'x 721, 724-26 (2d Cir. 2018) (affirming an ALJ who rejected the uncontradicted opinions of three treating physicians that Plaintiff would be off-task and absent for significant portions of the day and month). However, as in *Lesterhuis*, "[neither] the ALJ nor the Appeals Council analyzed the substance of [the newly-submitted treating physician's] opinion, and we may not 'affirm an administrative action on grounds difference from those considered by the agency.'"

---

[5] *See, e.g., Royal v. Astrue*, No. 5:11-CV-456 (GTS/ESH), 2012 WL 5449610, at *6 (N.D.N.Y. Oct. 2, 2012) (while ALJs are entitled to resolve conflicts in the record, they cannot pick and choose only evidence from the same sources that supports a particular conclusion) (citing, *inter alia, Fiorello v. Heckler*, 725 F.2d 174, 175-76 (2d Cir. 1983)) (Rep't-Rec.), *adopted*, 2012 WL 5438945 (N.D.N.Y. Nov. 7, 2012).

[6] *See, e.g., Sonia V. v. Comm'r of Soc. Sec.*, No. 5:18-CV-22 (ATB), 2019 WL 428829, at *7 (N.D.N.Y. Feb. 4, 2019) (daily activities such as making simple meals and performing chores with the help of others provide "a very weak basis" for discounting treating source opinions, because none were performed at a rate of eight hours a day, five days a week) (citing *Mallery v. Berryhill*, No. 3:17-CV-587 (DEP), 2018 WL 1033284, at *4 (N.D.N.Y. Feb. 22, 2018)).

*Lesterhuis v. Colvin*, 805 F.3d at 89 (citations omitted). To the extent that ALJ addressed Dr. Khan's opinion, his analysis did not effectively contradict the opinion of Dr. Emery.

The errors in the Commissioner's treatment of the opinion evidence of the treating physicians taints the ALJ's RFC determination and the ultimate decision that Plaintiff was not disabled. "When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). This Court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996). On remand, the Commissioner should properly analyze the opinions of the treating physicians and the other medical evidence in re-assessing Plaintiff's RFC and his ability to perform competitive work in the national economy.

**ACCORDINGLY**, it is

**ORDERED** that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the opinions of the treating physicians and other medical and non-medical evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Report.

Dated: August 28, 2019
Syracuse, New York

Andrew T. Baxter
U.S. Magistrate Judge